## GRIP NUT CO. v. MacLEAN–FOGG LOCK NUT CO.

District Court, N. D. Illinois, E. D. August 7, 1929.

No. 8666.

Hill & Hill and Rector, Hibben, Davis & McCauley, all of Chicago, Ill., for complainant.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., for defendant.

LINDLEY, District Judge. Plaintiff seeks to enjoin defendant from infringing its patent No. 1,271,782 for lock nut and process for making same, issued to Sharp July 9, 1918. Defendant asserts as defenses invalidity and noninfringement.

Typical claims of plaintiff are No. 1 for process and No. 6 for device, both quoted in the margin.[1]

It is apparent that to achieve his desired result the patentee brought about in an ordinary nut such modification of the screw threads within the nut as would, when screwed upon a proper bolt, create sufficient friction as to resist loosening from vibration or other forces in usage, and thus securely lock the nut to the bolt. This modification was brought about by slight compression of the nut threads on each side of the screw hole, produced by forcibly hammering the elevated ridge of metal running across the top of the nut, slightly narrower than the hole. The purpose was to produce such compression or modification of the screw threads as would lock them securely but would not so deform them as to make it impossible to use the nut or bolt again.

The court is of the opinion that Howarth No. 321500, issued July 7, 1885, is a complete teaching of everything that Sharp needed to make the device included within his patent sued upon. Howarth's patent discloses an ordinary nut provided on its upper surface near the bolt hole with one or more lumps hammered or pressed down to the extent desired in order to throw certain threads of the nut slightly off pitch and thus bind tightly upon the threads of the bolt. True it is that Howarth and his associate Bayliss in their drawings pictured a nut with one lump only, but they stated that one or more lumps could be used. These lumps the patentee pictured as narrower than the diameter of the bolt hole and placed adjacent to the edge of the bolt hole. Plaintiff placed a ridge across the top of the nut and then bored the hole through both the ridge and the nut, making of the ridge two lumps on either side of the hole, which performed the same function as the lumps of Howarth. If Howarth did not teach the delvers in the art that the lumps should be placed directly opposite each other, it seems perfectly clear from an examination of the devices submitted and from the testimony that it was obvious to a mechanic attempting to construct

---

[1] Claim No. 1.

The herein described process of producing a lock nut consisting in forming a blank of substantially equal thickness throughout and solid except for the bolt hole with a centrally disposed rectangular shaped ridge of less width than the diameter of the bolt hole extending across one face thereof intersected by the bolt hole, and forming a thread in said nut, and thereafter placing the same upon a flat surface and applying pressure to the face of the ridge, whereby part of the threads in line with the ridge on each side of the bolt hole are modified, the compressed part of the topmost thread in each case being of a length substantially of the width of the ridge, and the compressed part of

each succeeding modified thread being slightly less in length as they approach toward the other face of the nut.

Claim No. 6.

A lock nut comprising a threaded bolt nut provided with a centrally disposed flat faced ridge across one face thereof severed by the bolt hole, the width of the ridge being less than the diameter of the bolt hole, the threads formed in the ridge being slightly compressed toward the other face of the nut, each succeeding thread of the nut beneath the ridge being likewise compressed, but successively shortened in length and disappearing within the body of the nut.

a lock nut that symmetry, balancing of compression, and other desirable features would be best obtained by locating the two lumps diametrically opposite each other. Furthermore, it should be noticed in this connection that Sharp made a nut so constructed and that same was in public use and sold to the public more than two years before the application for the patent in suit was filed.

True it is that Howarth pictured in his drawings an annular ring upon the bottom of his nut, but in his description and claims he mentioned no such ring, and it is obvious that the same was in no wise a part of his claimed invention. He described the nut as an ordinary screwed nut.

Some of plaintiff's testimony is to the effect that the plaintiff, in attempting to reconstruct Howarth's nut, developed such a "lead error" as would cause too great compression and so deformed the threads that the bolt and nut, once having been used, could not be reused, but it seems to the court that, in the experiment named, if an ordinary screw nut had been used, the amount of compression obtained could have been as well controlled in Howarth's device as in Sharp's. If Howarth's lumps were too high for practical use, a mechanic making the nut could easily lower the same, and the hammering easily be so regulated as to produce the desired amount of compression. Sharp was able to determine by experiment only how much compression he needed in his nut. Howarth necessarily had to follow the same method. The defendant, following this method, made a satisfactory reproduction of Howarth's nut.

While the wording of Howarth and Sharp in their respective patents is somewhat different, the conclusion is inevitable that both patentees had in mind the same process and the same result. Howarth said that he intended "to form a nut in such manner as that the nut shall distort the convolutions of the thread upon the bolt, such distortion securely preventing the nut from becoming unscrewed." He referred to the compressed parts as "pressed down or indented parts." He said he intended to "distort, that is to say, the convolutions of the thread of the nut are forced out of pitch or out of gage." He speaks of "pressed down or indented convolutions of the thread of the nut." He desired to "distort or throw out of true pitch the said threads." The plaintiff in his patent says that "the threads are caused to assume a slightly abnormal position, in which the thread nearest the top of the ridge is compressed its entire length";

that "the threads are slightly compressed"; that "part of the threads in line with the ridge are modified"; that they are "slightly compressed." In the testimony the plaintiff spoke constantly of the "deflection" of Sharp, but the word is used only in one place in Sharp's patent, and that is in line 42, page 1, wherein in describing his threads he says: "Fig. 5 is the same section showing the *deflection* or curve of a portion of the threads of the nut in the finished product." Apparently the same idea was in the mind of each. To deflect is to turn aside; to deviate from a straight or horizontal line or from a proper position; to swerve; to deviate. To depress is to press down. To compress is to press together. To distort is to twist out of natural or regular shape; to twist aside physically; to force or put out of the true posture; to twist, wrest, or deform. One who deflects the thread of a screw forces it out of its normal or true pitch. This is equivalent to distortion. Howarth endeavored to get a portion of the threads of his screw out of true pitch. The extent of such modification from the true pitch depended entirely upon the amount of pressure brought to bear upon the lumps. Sharp sought to modify the screw threads by turning them aside from their true pitch, and the extent of his deflection, modification, depression, or compression depended entirely upon the amount of pressure brought to bear upon the two lumps; that is, the two sections of the ridge on either side of the hole. Both sought to achieve an end which would produce enough modification of the threads, when engaged with the screw threads of the bolt, to cause the nut to hold securely, so as to resist vibration or other forces tending to loosen the nut from the bolt, and both relied upon the compression of the screw threads to secure that result.

The Patent Office, in granting Sharp's patent, apparently did not appreciate or understand Howarth's patent, for in the references cited the examiner relied upon a patent much further removed from Sharp than was Howarth. This appears clearly from an examination of the file wrapper's contents.

Neither Sharp nor Howarth defined the degree of modification to be secured. It was still necessary for the manufacturer of the nut to determine by experimentation just the degree of compression or modification which would produce the best result, and if it be true that the threads of the plaintiff or of the defendant are modified to a less extent than those of Howarth, it is also true that

the manufacturer could not ascertain from plaintiff's patent the extent of compression or modification necessary to produce the desired result. His only refuge for correct results was in experimentation.

Plaintiff contends that Howarth's nuts could not be reused, but we think the contrary is apparent if the manufacturer is sufficiently skilled as a mechanic to secure by experimentation the proper degree of compression which will permit of reuse. That Howarth's associate Bayliss so understood Howarth's invention, in which he was concerned, appears from his language in his own patent, where he says: "The nuts may be screwed and unscrewed upon the bolt several times in succession without material injury to the threads and still continue to bind tightly upon the bolts." He further says that this actual result corresponds with that described in the Howarth patent.

The court is of the opinion that Howarth taught everything necessary to instruct Sharp and other members of the public to make what is now relied upon by the plaintiff as an invention; that Sharp was anticipated by Howarth; and that, further, if the court is in error in this conclusion, if there is any distinguishing feature between Sharp and Howarth, if there is any particular in which Sharp achieved something theretofore unknown, the defendant has merely followed the teaching of Howarth and does not infringe.

There will be a decree dismissing the bill for want of equity, at the costs of the plaintiff.